IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LARRY DON BURTON, | ) | CASE NO. 5:17 CV 975 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

Before me by referral[1] is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Larry Don Burton, for supplemental security income. The Commissioner has answered[2] and filed the transcript of the administrative record.[3] Under my initial[4] and procedural[5] orders, the parties have

---

[1] This matter was referred to me under Local Rule 72.2 in a non-document order dated May 9, 2017.

[2] ECF # 9.

[3] ECF # 10.

[4] ECF # 5.

[5] ECF # 11.

briefed their positions[6] and filed supplemental charts[7] and the fact sheet.[8] They have participated in a telephonic oral argument.[9]

## Facts

**A.    Background facts and decision of the Administrative Law Judge ("ALJ")**

Burton, who was 39 years old at the time of the administrative hearing,[10] has a 12th grade education, but did not graduate from high school or obtain his GED.[11] He has no past relevant work history.[12]

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Burton had severe impairments consisting of diabetes mellitus; lymphedema; obesity; spine disorder; and anxiety disorder.[13] The ALJ made the following finding regarding Burton's residual functional capacity:

---

[6] ECF # 14 (Commissioner's brief); ECF # 12 (Burton's brief); ECF # 15 (Burton's reply brief).

[7] ECF # 14, Attachment 1 (Commissioner's charts); ECF # 13 at 3 (Burton's charts).

[8] ECF # 13 (Burton's fact sheet).

[9] ECF # 19.

[10] ECF #13 at 1.

[11] *Id.*

[12] ECF # 10, Transcript ("Tr.") at 43.

[13] *Id.* at 21.

"After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: he can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. He can sit 6 hours in an 8-hour workday, but will need to alternate to a standing position for about 2 minutes after 30 minutes of sitting without being off task; he can stand and walk 2 hours in an 8-hour workday. He will need to alternate to sitting for about 2 minutes after every 30 minutes of standing or walking without being off task. He can push and pull as much as he can lift and carry. He can climb ramps and stairs, balance, stoop, kneel, or crouch occasionally; he can never climb ladders and scaffolds or crawl. He is limited to being around unprotected heights, moving mechanical parts and operating a motor vehicle to occasionally. He is limited to performing simple, routine tasks and can interact with supervisors, coworkers and the general public on a frequent basis. The claimant needs to rest his leg on a stool to keep it parallel to the ground while seated."[14]

Burton has no past relevant work history.[15]

Based on an answer to a hypothetical question posed to the vocational expert ("VE") at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Burton could perform.[16] The ALJ, therefore, found Burton not under a disability.[17]

**B.    Issue on judicial review**

Burton asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Burton presents the following issue for judicial review:

---

[14] *Id.* at 23-24.

[15] *Id*. at 28.

[16] *Id*.

[17] *Id*. at 29.

- Whether the ALJ improperly found that there were jobs in the national economy that Burton could perform given his need to elevate his leg parallel to the ground any time he is seated.[18]

The Court recommends that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed and remanded for further administrative proceedings.

## Analysis

**A.    Applicable legal principles**

*1.    Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[19]

---

[18] ECF # 12 at 6.

[19] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[20] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[21]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.    Application of standards**

This case presents a unique issue: where the VE gets caught up in the complexities of a hypothetical, and admits that he cannot form an opinion on significant numbers of jobs in the national economy, must the ALJ's decision finding no disability be reversed and remanded?

By way of background, the ALJ adopted a "light modified" RFC, incorporating exertional limitations consistent with light work but with additional limitations.  For purposes of this case, the most important additional limitations are (1) a sit/stand option and (2) Burton's need to rest his leg on a stool to keep it parallel to the ground while seated.

---

[20] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

The ALJ began his questioning of the VE by posing a hypothetical that did not include a sit/stand option or the elevated leg limitation.[22] The VE identified a significant number of jobs in the national economy in response.[23] The ALJ then added the elevated leg limitation:[24]

> **Q [ALJ]** Thank you. Mr. Balkin, if I were to modify this hypothetical by adding that this individual would need to while seated, rest the left leg on a stool to keep it just parallel to the ground, how does that impact the number of jobs, the job availability from hypothetical one or does it?
>
> **A [VE]** Well I think that 90 degrees a person could perform seated assignments. I think the number would be compromised on that time. In the two hours of standing and walking the person obviously could not elevate their leg, so I would guess that I would compromise the numbers by 30 percent.
>
> **Q** So the jobs you gave me would still exist but would be compromised by 30 percent?
>
> **A** Yes.
>
> **Q** If you had given – would that be the same for sedentary jobs? Would they also be compromised?
>
> **A** Yes, for the same reason because we have the same standing and walking parameter for hypo one and two.
>
> **Q** All right, so a person who can sit for up to six hours, stand and walk for two, but while seated they need to rest their leg on a stool, *just kind of keep it stretched up like the way Mr. Burton has his leg right now*, that would reduce the numbers by 30 percent rather than be sedentary –
>
> **A** Well you've changed that just a touch. While seated I think the leg at 90 degrees is fine.

---

[22] Tr. at 62-63.

[23] *Id.* at 63-64.

[24] *Id.* at 64-65 (emphasis added).

**Q** That's what I meant.

**A** Yes.

**Q** Okay. So let's go back. We're starting hypothetical one and I'm adding to this while this person is seated under hypothetical one, this person will need to rest their leg on a stool to keep it parallel to the ground just when sitting down.

**A** Okay. I don't think there would be much compromise in those numbers if that need to be done while seated up to 90 degrees.

**Q** Right.

**A** My initial response was the for the two hours standing and walking –

**Q** No, no, it's not the same.

**A** Yes, thank you.

Burton's counsel then established for the record that Burton's leg as elevated at the hearing was just above the height of the desk at which he was sitting.[25] When Burton's counsel brought this to the VE's attention, noting that Burton could not place his leg while elevated under a standard work desk, the VE testified that he would not even try to estimate the effect of that limitation on the occupational base:[26]

> **Q [Attorney]** Okay. I know this is a little bit demonstrative but looking at my client right now, we're sitting at a desk that's a typical desk height or workstation height?
>
> **A [VE]** Close, sure.

---

[25] *Id.* at 68.

[26] *Id.* at 68-70.

**Q** Okay. My client's leg is just about at parallel I believe as far as I can tell and his foot is a couple of inches above the top of that desk height, correct? I'm describing that accurately?

**A** As I look at it now, yes.

**Q** Okay.  So if I take the hypotheticals [sic] dealing with elevating the leg to parallel and I add that while at parallel this person cannot hide his leg or put his leg under the workstation and instead would have to twist to do any type of typing or writing or any type of work at a workstation.  Does that have a vocational impact in and of itself?

**A** I think it could. I think office environments are structured in many different ways. If a person can't get their leg under a desk they can get it to the side of the desk. You know, many offices have keyboard that move, so yes, it could have some impact in some office environments. I couldn't estimate.

**Q** So it's going to depend on the exact environment of each office, right?

**A** Well office environments aren't structured all a certain way.

**Q** Correct, they could have people sitting more closely together where that could impact a co-worker or something like that.  We could have fixed keyboards that might not be able to move. I mean, there are a variety of things that could impact those jobs?

**A** We could have a wireless environment where people are on couches so a variety of environments is the best I can do.

**Q**  Sure.

**A**  I wouldn't even try to estimate.

**Q** So it's too difficult to come up with numbers of an impact on that type of a situation?

**A**  Well I think there's a wide variance.

Burton posits this response as eliminating any evidence of a significant number of jobs in the national economy.  The Commissioner responds that Burton's counsel changed the

hypothetical, and that the ALJ could rely upon the VE's answer to the hypothetical without the "under the desk" concession elicited by Burton's counsel. This case turns on whether the hypothetical that disoriented the VE was a clarification of the one originally posed by the VE or an alternative hypothetical.

The Commissioner bears the burden of proof at Step Five of the sequential analysis.[27] Counsel for both sides cite cases regarding when an ALJ can and cannot rely upon a VE's testimony. The case of *Frommel v. Commissioner of Social Security*,[28] to which Burton directs the Court, most closely approximates the facts of the instant case. In *Frommel*, the ALJ, purportedly relying on the VE's testimony, identified three representative jobs at Step Five that Frommel could perform: photocopy machine operator (light); cashier (light); and lens inserter (sedentary).[29] Frommel argued, and the Commissioner conceded, that the ALJ should not have included the sedentary job in the Step Five analysis because Frommel would be entitled to benefits if limited to sedentary work.[30] Frommel then argued that the cashier position should also have been excluded: "Although the VE initially identified cashier as a job that Plaintiff could perform, the VE corrected his testimony once he was reminded that

---

[27] *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

[28] *Frommel v. Comm'r of Soc. Sec.*, No. 1:14-cv-522, 2015 WL 3970147(S.D. Ohio June 10, 2015), *report and recommendation adopted by Frommel v. Comm'r of Soc. Sec.*, 2015 WL 3970154 (S.D. Ohio June 30, 2015).

[29] *Id.* at *3.

[30] *Id.*

Plaintiff required the use of an oxygen tank due to his severe COPD."[31] Once the lens inserter and cashier jobs were removed, only 730 representative photocopy machine operator jobs remained.[32] The court found that remand was required for that reason alone.[33]

The ALJ always must build an "accurate and logical bridge" from the evidence to his conclusions.[34] Here, the ALJ specifically qualified the elevated leg limitation in the hypothetical by referencing how Burton had his leg at the hearing.[35] However, the ALJ and the VE then referred simply to the leg being at 90 degrees throughout the remainder of the direct questioning of the VE.[36] Burton's counsel questioned the VE regarding the position of Burton's leg during the hearing,[37] which the ALJ had already incorporated in his hypothetical to the VE. The ALJ ultimately included the requirement that Burton "needs to rest his leg on a stool to keep it parallel to the ground while seated" into the RFC.[38] However, without discussion he then relied on the VE's testimony to support his Step Five finding.[39]

---

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted).

[35] Tr. at 65.

[36] *Id.* at 65-68.

[37] *Id.* at 68.

[38] *Id.* at 24.

[39] *Id.* at 29.

While hardly a clear cut case, viewed from the lens that the Commissioner bears the burden proof at this step the transcript supports the interpretation that Burton's counsel clarified the ALJ's hypothetical through cross-examination. The VE ultimately stated that he could not estimate the impact such a limitation would have on the occupational base.[40] The law forbids the ALJ from relying on the VE's testimony where the VE "is unable to testify without qualification about the jobs a claimant can perform."[41] Therefore, the ALJ lacked substantial evidence to support his finding at Step Five.

## Conclusion

Substantial evidence does not support the Commissioner's finding that Burton had no disability. Accordingly, I recommend that the decision of the Commissioner denying Burton supplemental security income be reversed and remanded for clarification of the elevated leg limitation in the RFC and a proper Step Five analysis regarding whether there are jobs in significant numbers in the national economy that Burton can perform as a result.

Dated: June 14, 2018             s/ William H. Baughman, Jr.
                                                                                      United States Magistrate Judge

---

[40] *Id.* at 68-70.

[41] *Young v. Apfel*, 40 Fed. App'x 157, 163 (6th Cir. 2002).

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[42]

---

[42] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).